# EXHIBIT A

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known)*: _____     Chapter   11

☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | Cineworld Group plc |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 8  2  9  9  6  1  1  0  4  3 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 8th Floor Vantage London, Great West Road<br>Number           Street | Number           Street |
| | P.O. Box |
| Brentford, England, UK           TW8 9AG<br>City                    State    Zip Code | City                    State    Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| County | Number           Street |
| | City                    State    Zip Code |

5. **Debtor's website** (URL)     **https://www.cineworldplc.com/**

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | **Cineworld Group plc** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| **7.** **Describe debtor's business** | A. *Check One:* | |
| | ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)) | |
| | ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) | |
| | ☐ Railroad (as defined in 11 U.S.C. § 101(44)) | |
| | ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)) | |
| | ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)) | |
| | ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)) | |
| | ☒ None of the above | |
| | B. *Check all that apply:* | |
| | ☐ Tax-exempt entity (as described in 26 U.S.C. § 501) | |
| | ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3) | |
| | ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11)) | |
| | C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes . **512131 - Motion Picture Theaters (except Drive-Ins)** | |

| | | |
|---|---|---|
| **8.** **Under which chapter of the Bankruptcy Code is the debtor filing?** | *Check One:* | |
| | ☐ Chapter 7 | |
| | ☐ Chapter 9 | |
| A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box | ☒ Chapter 11. *Check all that apply:* | |
| | | ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | | ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | | ☐ A plan is being filed with this petition. |
| | | ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
| | | ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form. |
| | | ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2. |
| | ☐ Chapter 12 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?** If more than 2 cases, attach a separate list. | ☒ No ☐ Yes. | District | | When | MM/DD/YYYY | Case number |
| | | District | | When | MM/DD/YYYY | Case number |

| Debtor | **Cineworld Group plc** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

| | Debtor | **See Rider 1** | Relationship | **Affiliate** |
|---|---|---|---|---|
| | District | **Southern District of Texas** | | |
| | | | When | **09/07/2022** |
| | Case number, if known | | | MM / DD / YYYY |

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____
Number        Street

_____
City                                State        Zip Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____
Contact name _____
Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors[1]**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☒ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

[1] The estimated number of creditors and estimated amounts of assets and liabilities are being listed on a consolidated basis for all Debtor affiliates listed on Rider 1, attached hereto.

| Debtor | **Cineworld Group plc** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| **15. Estimated assets** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| **16. Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☒ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| | Request for Relief, Declaration, and Signatures |
|---|---|

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **09/07/2022**
               MM/ DD / YYYY

**✗**    */s/ James A. Mesterharm*                **James A. Mesterharm**
     Signature of authorized representative of debtor          Printed name

Title    **Chief Restructuring Officer**

**18. Signature of attorney**

**✗**    */s/ Matthew D. Cavenaugh*        Date    **09/07/2022**
     Signature of attorney for debtor                  MM/DD/YYYY

     **Matthew D. Cavenaugh**
     Printed name

     **Jackson Walker LLP**
     Firm name

     **1401 McKinney Street, Suite 1900**
     Number           Street

     **Houston**                         **Texas**      **77010**
     City                               State      ZIP Code

     **(713) 752-4200**                   **mcavenaugh@jw.com**
     Contact phone                        Email address

     **24062656**                        **Texas**
     Bar number                        State

<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| |
|---|
| United States Bankruptcy Court for the: |
| **Southern District of Texas** |
| (State) |
| Case number *(if known):* _____  Chapter ___11___ |

☐ Check if this is an
amended filing

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Cineworld Group plc.

Cineworld Group plc
13th Avenue Partners, L.L.C.
A 3 Theatres of San Antonio, Ltd.
A 3 Theatres of Texas, Inc.
Augustus 1 Limited
Augustus 2 Limited
Basildon Cinema 2 Limited
Basildon Cinema Number Two 2 Limited
Bromley Cinema 2 Limited
Busby AssignCo, LLC
Cinebarre, LLC
Cinemas Associates, LLC
Cine-UK Limited
Cineworld Cinema Properties Limited
Cineworld Cinemas Holdings Limited
Cineworld Cinemas Limited
Cineworld Elite Picture Theatre (Nottingham) Limited
Cineworld Estates Limited
Cineworld Funding (Jersey) Limited
Cineworld Holdings Limited
Cineworld HunCo Kft.
Cineworld South East Cinemas Limited
City Screen (Brighton) Limited
City Screen (Liverpool) Limited
City Screen (S.O.A.) Limited
City Screen (Stratford) Limited
City Screen (York) Limited
Classic Cinemas Limited
Consolidated Theatres Management, L.L.C.
Crown Finance US, Inc.
Crown Intermediate Holdco, Inc
Crown Theatre Corporation
Crown UK HoldCo Limited
CS (Brixton) Limited
CS (Exeter) Limited
CS (Norwich) Limited
Eastgate Theatre, Inc.
Edwards Theatres, Inc.
Empire Cinema 2 Limited
Frederick Plaza Cinema, Inc.
Gallery Cinemas Limited
Gallery Holdings Limited
Great Escape LaGrange LLC

Great Escape LLC
Great Escape of Nitro, LLC
Great Escape of O'Fallon, LLC
Great Escape Theatres of Bowling Green, LLC
Great Escape Theatres of Harrisburg, LLC
Great Escape Theatres of Lebanon, LLC
Great Escape Theatres of New Albany, LLC
Great Escape Theatres, LLC
Hemel Hepstead Two Cinema 2 Limited
Hollywood Theaters III, Inc.
Hollywood Theaters, Inc.
Hoyts Cinemas Corporation
Interstate Theatres Corporation
Lois Business Development Corporation
McIntosh Properties, LLC
Newcastle Cinema 2 Limited
Newman Online Limited
Next Generation Network, Inc.
Oklahoma Warren Theatres II, LLC
Oklahoma Warren Theatres, LLC
Pacific Rim Business Development Corporation
Picturehouse Bookings Limited
Picturehouse Cinemas Limited
Picturehouse Entertainment Limited
Poole Cinema 2 Limited
R.C. Cobb II, LLC
R.C. Cobb, Inc.
Ragains Enterprises LLC
RCI/FSSC, LLC
RCI/RMS, LLC
Regal – 18, LLC
Regal Cinemas Corporation
Regal Cinemas Holdings, Inc.
Regal Cinemas II, LLC
Regal Cinemas, Inc.
Regal CineMedia Corporation
Regal CineMedia Holdings, LLC
Regal Distribution Holdings, LLC
Regal Distribution, LLC
Regal Entertainment Group
Regal Entertainment Holdings II LLC
Regal Entertainment Holdings, Inc.
Regal Gallery Place, LLC

Regal Investment Company
Regal Licensing, LLC
Regal Stratford, Inc.
Regal/ATOM Holdings, LLC
Regal/Cinebarre Holdings, LLC
Regal/DCIP Holdings, LLC
RegalRealty - 17, LLC
Richmond I Cinema, L.L.C.
The Movie Machine, L.L.C.
UA Shor, LLC

UA Swansea, LLC
United Artists Properties I Corp.
United Artists Realty Company
United Artists Theatre Circuit II, LLC
United Artists Theatre Circuit, Inc.
United Artists Theatre Company
Valeene Cinemas, LLC
Wallace Theater Holdings, Inc.
Warren Oklahoma Theatres, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CINEWORLD GROUP PLC, | ) | Case No. 22-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### LIST OF EQUITY SECURITY HOLDERS[2]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Global City Theatres B.V. | Coolsingel 61<br>7th floor<br>Rotterdam NL 3012AB | 20.00% |

---

[2] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CINEWORLD GROUP PLC, | ) | Case No. 22-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Global City Theatres B.V. | 20.00% |

Case 22-90168-CML Doc 20-1 TX Filed on 09/07/22 Page 10 of 22

---

**Fill in this information to identify the case:**

Debtor name ___Cineworld Group plc, *et al.*___

United States Bankruptcy Court for the: ___Southern___   District of ___Texas___
                                                                    (State)

Case number (If known): _____

☐ Check if this is an amended filing

---

# Chapter 11 or Chapter 9 Cases:  Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders   **12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes.  Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | **AMAS Ltd. T/A Jones Lang Lasalle** P.O. Box 55791, Docklands, London, England E14 7AE<br><br>Town Hall Market Place, Henley-on-Thames, England RG9 2AQ | credit_management@standardlife.com aamcashiers@eu.jll.com | Rent | N/A | N/A | N/A | N/A | $7,849,764 |
| 2 | **Arvest Bank** 1501 W Edmond Road, Edmond, OK 73003 | Shandy Belford (405) 419-3834 sbelford@arvest.com | Bank Loans | N/A | N/A | N/A | N/A | $11,900,000 |
| 3 | **Bidvest Noonan (UK) Ltd.** St Magnus House 3, Lower Thames Street, london, England EC3R 6HD | 44 844 225 1115 ar@bidvestnoonan.com | Trade Debt | N/A | N/A | N/A | N/A | $3,214,557 |
| 4 | **BNY Melon** 160 Queen Victoria Street, London, England EC4V 4LA | Joanne Hume 44 (0) 1202 689653 Ian.Johnson@bnymellon.com | Bank Loans | N/A | N/A | N/A | N/A | $213,000,000 |
| 5 | **Booker Limited** Equity House Irthlingborough Road, Wellingborough, England NN8 1LT | Terry Riley accountsreceivable@booker.co.uk creditcontrol@booker.co.uk | Trade Debt | N/A | N/A | N/A | N/A | $2,019,919 |

Debtor Name: Cineworld Group plc, *et al.*        Case Number (if known):_____

| # | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6 | **Christie Digital Systems Canada Inc. - USD** 200 Ashville Way, Workingham, England RG41 2PL | ARQueries-EMEA@christiedigital.com cinema.orders.emea@christiedigital.com | Trade Debt | N/A | N/A | N/A | $1,891,918 |
| 7 | **Christie Digital Systems USA Inc. RCM** 10550 Camden Drive, Cypress, CA 90630 | Paul Haupert 714-220-3561 Paul.haupert@christiedigital.com | Trade Debt | N/A | N/A | N/A | $3,952,541 |
| 8 | **Cinionic Inc** 11080 White Rock Rd, Suite 100, Rancho Cordova, CA 95670 | Paul Hermans +32 495 36 22 02 paul.hermans@cinionic.com | Trade Debt | N/A | N/A | N/A | $8,639,937 |
| 9 | **CJ 4DPLEX** 6F I-Park Mall Hangang-daero 23-gil 55, Yongsan-gu, Seoul, South Korea 04377 | 82 371 5246 youngsoo.kim6@cj.net hc.ahn@cj.net | Construction | N/A | N/A | N/A | $1,669,668 |
| 10 | **CJ 4DPLEX Americas LLC** 7082 Hollywood Blvd., Suite 600, Los Angeles, CA 90028 | Don Savant 213-378-2014 Don.savant@cj.net | Construction | N/A | N/A | N/A | $1,718,438 |
| 11 | **IMAX Corporation** 2525 Speakman Drive, Mississauga, ON, Canada L5K1B | Mark Welton 905-403-6254 MWelton@imax.com | Trade Debt | N/A | N/A | N/A | $8,881,917 |
| 12 | **IMAX Theatres International Ltd.** 2525 Speakman Drive, Mississauga, ON, Canada L5K 1B1 | Will Carass WCarass@imax.com | Construction | N/A | N/A | N/A | $2,534,949 |
| 13 | **Intertrust Technologies Corporation** 920 Stewart Drive, Suite 100, Sunnyvale, CA 94085 | General Counsel jmcdow@intertrust.com | Settlement Agreement | N/A | N/A | N/A | $4,500,000 |
| 14 | **JP Morgan Chase** P.O. Box 100486, 2710 Media Center Drive, Building #6, Suite 120, Los Angeles, CA 90065 | Paramount Theat. Dist. Rcpt., | Trade Debt | N/A | N/A | N/A | $1,865,101 |
| 15 | **Lionsgate Film Inc.** 579 Fifth Avenue, 14th Floor, New York, NY 10017 | Harvey Shapiro (212) 621-8224 hshapiro@sargoy.com | Trade Debt | CUD | N/A | N/A | $15,135,562 |
| 16 | **Maeve Contractors Ltd.** Unit 1, 5 Eastfields Avenue, London, England SW18 1FU | info@maevecontractors.co.uk | Construction | N/A | N/A | N/A | $2,868,391 |

Debtor Name: Cineworld Group plc, *et al.*                   Case Number (if known):_____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 17 | **MAPP Property Management Limited**<br>180 Great Portland Street, London, England W1W 5QZ | Lisa Glendinning<br>0207 908 5643<br>cashier@wearemapp.com<br>lisa.glendinning@wearemapp.com<br>yazmin.griffiths@wearemapp.com | Rent | N/A | N/A | N/A | $3,937,518 |
| 18 | **McCarthy Tetrault LLP**<br>Box 48, Suite 5300, Toronto-Dominion Bank Tower, Toronto, ON, Canada M5K 1E6 | 416-362-1812<br>TOR-AR@mccarthy.ca | Professional Services | N/A | N/A | N/A | $1,662,033 |
| 19 | **Realty Income Corporation**<br>11995 El Camino Real, San Diego, CA 92130 | 858-284-5000 | Rent | N/A | N/A | N/A | $5,000,000 |
| 20 | **Royal Paper Corporation - Purchasing**<br>10232 Palm Drive, Santa Fe Springs, CA 90670 | George Abiaad<br>562-903-9030<br>GAbiaad@royalcorporation.com | Trade Debt | N/A | N/A | N/A | $3,468,853 |
| 21 | **Savills Commercial Ltd.**<br>12 Booth St., Manchester, England M2 4AW | managementtreasury@savills.com | Rent | N/A | N/A | N/A | $10,125,029 |
| 22 | **Sony Pictures Releasing**<br>The Brunel Building, 2 Canalside Walk, London, England W2 1DG<br><br>10202 W. Washington Blvd., Jimmy Stewart Bldg., Room 323D, Culver | Jake Walker and Jon Stone<br>Jake_Walker@spe.sony.com<br>UK_Remittances@spe.sony.com<br>Anneka_Ruparelia@spe.sony.com | Trade Debt | N/A | N/A | N/A | $3,269,023 |
| 23 | **The Walt Disney Company Ltd.**<br>The Walt Disney Company Pavilion House, 31-32, Dublin, Ireland D02 | Kerryann Leonard<br>+ 44 208 222 59 00<br>Kerryann.Leonard@disney.com<br>DWSS.EMEA.UK.Collection@disney.com | Trade Debt | N/A | N/A | N/A | $12,082,212 |
| 24 | **Universal**<br>Central Saint Giles St Giles High Street, London, England WC2H 8NU | Universalpicturesukandeire.finance@nbcuni.com | Trade Debt | N/A | N/A | N/A | $20,461,774 |
| 25 | **Vistar Northern California**<br>P.O. Box 951080, Dallas, TX 75395 | John Mizer<br>303-662-7135<br>John.Mizer@pfgc.com | Trade Debt | N/A | N/A | N/A | $12,218,140 |
| 26 | **Walt Disney Studios Motion Pictures**<br>Bank of America Lockbox Sevices 13497 Collections, Chicago, IL 60693 | | Trade Debt | N/A | N/A | N/A | $1,983,947 |
| 27 | **Warner Bros Entertainment UK Limited**<br>Warner House 98 Theobalds Road, London, England WC1X 8WB | Alina Swierzewska<br>alina.swierzewska@warnerbros.com<br>Liliana.Carata@warnerbros.com | Trade Debt | N/A | N/A | N/A | $5,649,945 |

Debtor Name:  Cineworld Group plc, *et al.*                    Case Number (if known):_____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28 | **Warner Bros Pictures Inc.**<br>3903 W Olive Avenue, Burbank, CA 91505 | Jennifer Amaya | Trade Debt | N/A | N/A | N/A | $2,090,900 |
| 29 | **Wilmington Trust**<br>50 South Sixth Street, Suite 1290, Minneapolis, MN 55402 | Jay Campbell<br>612 217 5676<br>JCAMPBELL3@WilmingtonTrust.com | Bank Loans | N/A | N/A | N/A | $39,251,667 |
| 30 | **Workman LLP - Feltham**<br>4th Floor Minton Place, Station Road, Swindon, England SN1 1DA | 1412258085<br>swindon.cashiers@workman.co.uk | Rent | N/A | N/A | N/A | $4,307,214 |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | **Cineworld Group plc** |
| United States Bankruptcy Court for the: | **Southern District of Texas** |
| | (State) |
| Case number (If known): | |

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐   *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐   *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐   *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐   *Schedule H: Codebtors (Official Form 206H)*

☐   *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐   Amended Schedule

☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒   Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

| | | |
|---|---|---|
| Executed on | **09/07/2022** | ☒ */s/ James A. Mesterharm* |
| | MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | | **James A. Mesterharm** |
| | | Printed name |
| | | **Chief Restructuring Officer** |
| | | Position or relationship to debtor |

**Official Form 202**       **Declaration Under Penalty of Perjury for Non-Individual Debtors**

Company No. 05212407

<u>**CINEWORLD GROUP PLC**</u>
**(the "Company")**

Minutes of a meeting of the Board of Directors of the Company (the "**Board**")
held via videoconference
on 6 September 2022 at 8pm

| | | |
|---|---|---|
| **Present**: | Alicja Kornasiewicz | (Chair) |
| | Moshe Greidinger | |
| | Nisan Cohen | |
| | Camela Galano | |
| | Israel Greidinger | |
| | Dean Moore | |
| | Scott Rosenblum | |
| | Damian Sanders | |
| | Ashley Steel | |
| | Renana Teperberg | |
| **In attendance:** | Scott Brooker | Company Secretary |
| | Nigel Kravitz | General Counsel |
| | Advisors from PJT | |
| | Advisors from Slaughter and May | |
| | Advisors from Kirkland & Ellis LLP | |
| | Advisors from Ashurst and Kramer Levin | |
| | Advisors from AlixPartners, LLP | |
| **Apologies:** | Arni Samuelsson | |

**1.      Notice and Quorum**

The Chair declared the meeting open and a quorum present.

**2.      Chair**

It was **RESOLVED THAT** Alicja Kornasiewicz be appointed to chair the meeting.

**3.      Apologies**

It was noted that Arni Samuelsson had informed Scott Brooker in advance that he would be unable to attend the meeting. Mr Brooker informed the meeting that he had discussed the main business to be conducted at the meeting with Mr Samuelsson. Mr Brooker explained that Mr Samuelsson had confirmed that he was supportive of the Board approving the matters to be discussed at the meeting.

**4.      Declarations of Interest**

For the purposes of section 177 and section 182 (as applicable) of the Companies Act 2006 (the "**Act**"), and the Articles of Association of the Company and generally, each of the directors present confirmed that he or she had no interest in the business to be transacted which prevented him or her from being counted in the quorum or voting.

**5.      Directors' Duties of a Company in Financial Difficulty**

5.1     The Chair reminded the directors that they must comply with their directors' duties, including those set out in sections 171-177 of the Act, and that in addition to their general duty to act in good faith in a manner which would be most likely to promote the success of the Company for the benefit of its members as a whole, they must have regard (amongst other matters) to each of the factors listed in section 172 of the Act to the extent relevant to the business of the meeting, including in particular section 172(3) of the Act, which provides that the duty imposed by section 172 is subject to any enactment or rule of law requiring directors, in certain circumstances, to consider or act in the interests of the creditors of the company.

5.2     The directors noted that their duties are owed on a company by company basis and not on a group or divisional basis.  The directors further noted that once a company becomes insolvent, or there is a doubt as to its solvency, the directors must consider the interests of the company's creditors in order to minimise the potential loss to them.

5.3     It was noted that the directors should consider whether it would be in the interests of the Company and its shareholders, creditors, employees and other stakeholders to continue trading, taking into account the factors listed in paragraph 6 below.  It was further noted that the directors should conclude that the Company should continue trading only if there is a reasonable prospect that the Company will avoid insolvent administration or liquidation, though there is no need for the directors to be certain that the Company will avoid those insolvency processes.

6.    **Main Business of the Meeting**

6.1   The Chair noted that the Board has, over several months, monitored the Company's financial position and has reviewed and considered materials presented by the management of the Company and the Company's financial and legal advisers in relation to such financial position and the possible solutions available. The Chair explained that the purpose of the meeting was to consider the appropriate action to take in light of the Company's financial position.

6.2   In particular, the Chair explained that it has been proposed that the Company and certain of its subsidiaries should file voluntary petitions for relief under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. (the "**Bankruptcy Code**") in order to stabilise the Company's (and its wider group's) financial position (the "**Chapter 11 Filing**"). It was also noted that, under these plans, it was expected that the Company and its US, UK, Jersey and Hungary based subsidiaries would benefit from funding to be provided under a new "debtor in possession" loan facility (the "**DIP Financing**") that would help them to stabilise their financial position and, in particular, to meet their liabilities as they fall due. It was also noted that it was proposed that the Company would provide a guarantee and grant security in connection with the DIP Financing. The Board noted that it was proposed that, subject to the outcome of this meeting, the formal approval of the near-final versions of the definitive documents required to be signed in connection with the DIP Financing would be delegated to a committee of the Board.

6.3   It was noted that preparations were being made to commence the Chapter 11 Filing on the day of the meeting, but that this was subject to confirmation from the Company's advisers that all of the preparatory work for the Chapter 11 Filing was complete, with all necessary pre-filing payments received.

6.4   The Chair explained that the purpose of the meeting was to consider whether to approve:

(A)   the Chapter 11 Filing;

(B)   if thought fit, the terms of the DIP Financing (including in relation to the guarantee and security to be provided by the Company in connection with the DIP Financing); and

(C)   the appointment, in accordance with the Company's Articles of Association, of a committee of the Board to be authorised to negotiate and approve the final form of the definitive documents in relation to the DIP Financing on the Company's behalf.

7.    **Reasonable Prospects**

7.1   The Board referred to previous discussions regarding their duties and the legal framework for directors of English companies and considered the question of whether the Company has a reasonable prospect of avoiding insolvent liquidation or administration for the purposes of sections 214 and 246ZB of the Insolvency Act 1986.

3

7.2 It was noted that the Chapter 11 Filing would bring certain protections against creditors bringing certain actions and claims against the Company and its subsidiaries who are also expected to file for chapter 11 at or around the same time. It was also discussed that the DIP Financing, for which the Chapter 11 Filing is a pre-condition, should enable the Company and its US and UK subsidiaries to continue meeting their obligations as they fall due.

7.3 Accordingly, the Board considered that the Chapter 11 Filing would help the Company to avoid insolvent liquidation or administration and was in the best interests of the Company's creditors as a whole and other stakeholders. The Board concluded that the Company retains a reasonable prospect of avoiding insolvent liquidation or administration for the purposes of sections 214 and 246ZB of the Insolvency Act 1986.

## 8. Resolutions

Following due consideration of the matters discussed at the meeting, including their duties as directors of the Company and the proposals in relation to the Chapter 11 Filing, the Board **RESOLVED THAT:**

8.1 **Voluntary Petitions for Relief Under Applicable Bankruptcy Law and Seeking Necessary Relief**

(A) In the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, that the Company file or cause to be filed voluntary petitions for relief (the "**Bankruptcy Petitions**") under the provisions of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas or such other court of competent jurisdiction (the "**Bankruptcy Court**") for the Company any applicable foreign ancillary proceedings for the Company and, in accordance with the requirements of the Company's governing documents and applicable law, the Board hereby consents to, authorises, and, subject to confirmation from the Company's advisers that all of the preparatory work for the Chapter 11 Filing has been completed, with all necessary pre-filing payments received, approves the filing of the Bankruptcy Petitions and foreign ancillary proceedings, if any; and

(B) Any director or other duly appointed officer of the Company (collectively, the "**Authorised Persons**") is hereby authorised and appointed to act as signatory and attorney on behalf of the Company in respect of the Chapter 11 Filing and/or any person to whom such Authorised Persons and/or officers delegate certain responsibilities is hereby authorised to execute (under the common seal of the Company, if appropriate) and file on behalf of the Company and its subsidiaries all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all actions they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company and/or any of its subsidiaries.

8.2 **Retention of Professionals**

(A) Each of the Authorised Persons is hereby authorised, empowered, and directed to employ: (i) the law firm of Kirkland & Ellis LLP as general bankruptcy counsel;

(ii) the law firm of Jackson Walker LLP as co-bankruptcy counsel; (iii) the law firm of Slaughter and May as English counsel (iv) PJT Partners LP as investment banker; (v) AlixPartners, LLP as financial and restructuring advisor; (vi) Kroll Restructuring Administration LLC as claims and noticing agent; (vii) Ashurst LLP and Kramer Levin Naftalis & Frankel LLP as independent advisers to the board of directors of the Company; and (viii) any other legal counsel, accountant, financial advisor, restructuring advisor, or other professional the Authorised Persons deem necessary, appropriate, or advisable to retain; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorised Persons are hereby authorised, empowered, and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

(B)     Each of the Authorised Persons is hereby authorised, empowered, and directed to execute (under the common seal of the Company, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute (under the common seal of the Company, if appropriate) such further documentation that the Authorised Persons in their absolute discretion deem necessary, appropriate, or desirable in accordance with these resolutions.

## 8.3     Further Actions and Prior Actions

(A)     The Board hereby authorises any direct or indirect subsidiary of the Company or any entity of which the Company or any subsidiary of such Company is the sole member, general partner, or managing member, as applicable, to take each of the actions described in these resolutions or any of the actions authorised in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or the Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law);

(B)     In addition to the specific authorizations heretofore conferred upon the Authorised Persons, the Authorised Persons, either individually or as otherwise required by the Company's governing documents and applicable law, are hereby authorised to execute (under the common seal of the Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents on behalf of the Company relating to the Chapter 11 Filing;

(C)     Each of the Authorised Persons (and their designees and delegates) is hereby authorised and empowered, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each

case as in such Authorised Person's absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein;

(D) The Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the governing documents of the Company, or hereby waives any right to have received such notice;

(E) All acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed, and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorised in advance by resolution of the Board; and

(F) Any Authorised Person is hereby authorised to perform all other acts, deeds, and other actions as the Company itself may perform, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution (under common seal, whether or not expressed to be a deed, as may be necessary or appropriate), and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

8.4 **Appointment of Chief Restructuring Officer**

(A) The Board hereby creates the office of Chief Restructuring Officer.

(B) James A. Mesterharm is hereby appointed to serve as the Chief Restructuring Officer of the Company until his successor has been duly appointed or until his earlier resignation, removal from office, or death.

(C) The Chief Restructuring Officer shall report to the Board and the special committee of the Board, in coordination with the Chief Executive Officer, the Chief Operations Officer, and the Chief Financial Officer.

9. **Approval of the terms of the DIP Financing**

9.1 The Board considered the near-final form draft term sheet in relation to the DIP Financing. The Board was of the opinion that the provisional terms of the DIP Financing, including the provision of a guarantee and the granting of security by the Company in connection with the DIP Financing, was in the best interests of the Company, the Company's creditors as a whole and other stakeholders.

9.2    Accordingly, the Board resolved that the terms of the DIP Financing as contained in the DIP Term Sheet be and are hereby approved.

**10.    Committee of the Board**

10.1    The Board agreed that a committee should be established to consider in detail drafts of the relevant documents and, if thought fit, be authorised to negotiate and approve the final form of the definitive documents in relation to the DIP Financing on the Company's behalf.

10.2    Accordingly, the Board resolved that, pursuant to Article 92 of the Company's Articles of Association, a committee of the Board consisting of any two directors of the Company be constituted (the "**Committee**") with the following powers, authorities and discretions:

(A)    to negotiate and approve, on behalf of the Company, the final form of each of the agreements, deeds and documents which may be required for the DIP Financing and the transactions contemplated thereby;

(B)    to authorise, on behalf of the Company, any member or members of the Committee, or any person or persons appointed by the Committee, to execute and deliver on behalf of the Company (whether under hand or seal) any agreement, deed, or document relating to or connected with the DIP Financing, including any certificate, notice, or document to be signed and/or despatched by the Company under or in connection with the DIP Financing;

(C)    to authorise, on behalf of the Company, any member or members of the Committee, or any person or persons appointed by the Committee, to take any step on behalf of the Company which may be considered necessary or desirable by the Committee in connection with the DIP Financing; and

(D)    if required, to authorise, on behalf of the Company, any subsidiary of the Company to enter into any document, and grant any guarantee, in connection with the DIP Financing.

There being no further business the chair declared the meeting closed.

**Alicja Kornasiewicz**
Chair of the meeting